IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DISABILITY RIGHTS MISSISSIPPI                        PLAINTIFF

V.                                          CAUSE NO. 3:13cv547 HTW-LRA

MISSISSIPPI CHILDREN'S HOME                   DEFENDANT
SERVICES

## COMPLAINT

Plaintiff Disability Rights Mississippi files this Complaint against Mississippi Children's Home Services to gain monitoring access to the "CARES Center," a Psychiatric Residential Treatment Facility operated by Defendant. The purpose of this action is to protect children living in the CARES Center from harm and enforce the children's federal statutory right to an effective, meaningful Protection and Advocacy ("P&A") System.

### Parties

1. Plaintiff Disability Rights Mississippi ("DRMS") is a nonprofit organization with a federal mandate to protect the rights of individuals with disabilities. DRMS was formerly known as the Mississippi Protection and Advocacy System. Among other activities, DRMS and its agents travel across the State of Mississippi monitoring conditions and treatment in facilities housing individuals with disabilities.

2. Defendant Mississippi Children's Home Services is a nonprofit organization that provides psychiatric and educational services to children in Mississippi. The service relevant to this litigation is the Defendant's operation of the CARES Center, a Psychiatric Residential Treatment Facility in Jackson, Mississippi, which provides treatment to "children with severe emotional or behavioral disturbances." *See* CARES Center, *available at*

http://www.mchscares.org/statewide-services/campus-based/cares-center/ (last accessed Aug. 22, 2013). The Defendant may be served with process via its registered agent, Sherry Rowlett, at 1900 N. West Street, Jackson MS 39202.

## Jurisdiction and Venue

3. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because DRMS alleges violations of its rights under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act")[1], 42 U.S.C. §§ 15001 *et seq.*; and the Protection and Advocacy of Individual Rights Program (the "PAIR Act"), 29 U.S.C. §§ 794e *et seq.* These three laws are collectively referred to as "the P&A Acts."

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant resides in this District and the acts and omissions complained of occurred in this District.

## Factual Allegations

*The P&A Acts*

5. In the PAIMI Act, Congress recognized that "individuals with mental illness are vulnerable to abuse and serious injury . . . [and] subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning." 42 U.S.C. § 10801(a). Congress further recognized that "State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." *Id.* § 10801(a)(4).

6. To address these problems, the PAIMI Act "assist[s] States to establish and operate a protection and advocacy system for individuals with mental illness which will . . . protect and advocate the rights of such individuals through activities to ensure the enforcement

---

[1] This Act is sometimes referenced in case law as the "DD Act."

2

of the Constitution and Federal and State statutes; and . . . investigate incidents of abuse and neglect of individuals." *Id.* § 10801(b)(2).

7. Similarly, the PADD Act authorizes the same system "to protect the legal and human rights of individuals with developmental disabilities." *Id.* § 15041. The PAIR Act, meanwhile, authorizes that system "to protect the legal and human rights of individuals with disabilities who" are not covered under the PAIMI or PADD Acts. 29 U.S.C. § 794e(a)(1).

8. As a result of the P&A Acts, every state has created a "Protection and Advocacy System," or "P&A." "There is a P&A/CAP agency in every state and U.S. territory as well as one serving the Native American population in the P&A/CAP network is the largest provider of legally based advocacy services to people with disabilities in the United States." National Disability Rights Network, Member Agencies, *available at* http://www.ndrn.org/en/ndrn-member-agencies.html (last accessed Aug. 22, 2013).

9. While not identical, the P&A Acts overlap in many respects. In the PAIR Act, for example, Congress gave each P&A "the same general authorities, including access to records and program income, as are set forth in" the PADD Act. 29 U.S.C. § 794e(f)(2); *see, e.g., Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006) (concluding that the PAIMI, PADD and PAIR Acts all granted Connecticut's P&A access to a non-residential facility providing services to individuals with emotional impairments).

10. Under federal law, each P&A "shall have the power to bring legal actions to ensure the protection of its constituents and to litigate on behalf of its constituents." *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 375 (7th Cir. 2010) (en banc); *see* 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i).

## DRMS's Access Authority

11. DRMS is the P&A in Mississippi. *See Mississippi Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1056 (5th Cir. 1991) (affirming Judge Lee's "careful and scholarly memorandum opinion" and injunction granting the Mississippi P&A access to a residential facility housing adults with intellectual disabilities).

12. In order to protect individuals with disabilities, the P&A Acts provide DRMS with physical access to facilities housing individuals with disabilities.

13. For example, the PAIMI Act states that a P&A "shall . . . have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3). Similarly, the PADD Act states that a P&A "shall . . . have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of this part." *Id.* § 15043(a)(2)(H). The authority granted by the PAIR Act is identical to that granted by the PADD Act. *See* ¶ 9, *supra*.

14. More specifically, the regulations implementing the PAIMI Act state that "a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview." 42 C.F.R. § 51.42(c).

15. The same regulation further provides that "[t]his access is for the purpose of: (1) Providing information and training on, and referral to programs addressing the needs of

individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system; (2) Monitoring compliance with respect to the rights and safety of residents; and (3) Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents." *Id.*

16. The access provisions of the PAIMI Act apply with full force to the CARES Center because it is a "public or private residential setting that provides overnight care accompanied by treatment services." 42 C.F.R. § 51.2. In short, the CARES Center is a covered entity because it "render[s] care or treatment for individuals with mental illness."[2] *Id.* § 51.42(b).

17. The regulations implementing the PADD Act are similar. They provide that a P&A "and all of its authorized agents shall have unaccompanied access to all residents of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, for the purpose of: (1) Providing information and training on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system, including the name, address, and telephone number of the system and other information and training about individual rights; and (2) Monitoring compliance with respect to the rights and safety of service recipients." 45 C.F.R. § 1386.22(g).

18. To the extent there are residents with developmental disabilities, the access provisions of the PADD Act also apply to the CARES Center because it is a "setting that provides care, treatment, services and habilitation, even if only 'as needed' or under a contractual arrangement." 45 C.F.R. § 1386.19. In other words, the CARES Center would have to provide access because it "provide[s] services, supports, and other assistance for individuals with

---

[2] For purposes of the P&A Acts, behavioral and emotional disorders are treated the same as mental illness.

5

developmental disabilities." *Id.* § 1386.22(f); *see Connecticut Office of Prot. & Advocacy*, 464 F.3d at 241.

19. To the extent the CARES Center does not provide care, treatment, services, or habilitation for individuals with developmental disabilities, the PAIR Act authorizes DRMS "to protect the legal and human rights of individuals with disabilities who" are not covered under the PAIMI or PADD Acts, on access terms identical to the PADD Act. 29 U.S.C. § 794e(a)(1).

20. The P&A Acts authorize DRMS "to enter into contracts with State agencies and nonprofit organizations which operate throughout the State." 42 U.S.C. § 10804(a)(1). DRMS has contracted with Southern Poverty Law Center (SPLC), a nonprofit organization, to assist in fulfilling its statutory obligations. *See* Exhibit A (Agreement between DRMS and SPLC).

21. The Agreement gives SPLC "access to detention centers, correctional and mental health facilities housing individuals with mental illness, developmental disabilities, and/or other disabilities under the age of 22," including monitoring authority, as authorized under the P&A Acts. *Id.* (citing 42 U.S.C. § 10804(a)(1)); *see also* 42 C.F.R. § 51.42(a) ("Access to facilities and residents shall be extended to all authorized agents of a P&A system.").

22. DRMS and SPLC currently have access to several other Psychiatric Residential Treatment Facilities across the State of Mississippi. DRMS and SPLC conduct regular monitoring visits at those facilities in accordance with the P&A Acts.

*Defendant's Denial of Access*

23. On July 30, 2013, SPLC spoke with counsel for Defendant to schedule a periodic monitoring visit to the CARES Center. *See* Exhibit B (Correspondence of Counsel).

24. Over the next several days, SPLC provided counsel for Defendant with citations to federal statutes, federal regulations, and federal court decisions granting P&A systems and

their agents access to facilities housing individuals with disabilities. *Id.* Those authorities included Orders issued by Judges Jordan and Starrett of this Honorable Court, which are attached as Exhibit C.[3] *Id.* SPLC addressed counsel's specific concerns regarding HIPAA, the type of facilities authorized under the P&A Acts, Mississippi law, and the nature of SPLC's relationship with DRMS. *Id.*

25. On August 2, SPLC invoked its right to a written statement of reasons from the CARES Center explaining why the CARES Center was denying DRMS and SPLC monitoring access. *Id.* at 7 (citing 45 C.F.R. § 1386.22(i) and 42 C.F.R. § 51.43). SPLC requested a response by August 9. *Id.*

26. On August 13, counsel for Defendant issued a written letter formally denying SPLC monitoring access to the CARES Center. *See* Exhibit D (Denial Letter). Counsel for Defendant concluded that "[a]ccording to my interpretation of these regulations, absent an allegation of abuse/neglect, an authorized consent or a court document is required" before DRMS or its agents may engage in monitoring at the CARES Center. *Id.* at 2.

27. DRMS and SPLC subsequently concluded that this dispute would not be resolved within a reasonable time. *See* 42 U.S.C. § 10807(a).

## Cause of Action

28. DRMS incorporates the prior paragraphs as if fully realleged herein.

29. Defendant has violated DRMS's federal statutory right to timely, full, meaningful, and unaccompanied access to monitor children in the CARES Center, in violation of the P&A Acts. *See id.* §§ 10805(a)(3), 15043(a)(2)(H); 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g).

---

[3] In fact, in recent years, several other Judges in this District have issued similar Orders. *See Disability Rights Mississippi v. Lauderdale Cnty.*, No. 4:09-cv-137-TSL-LRA (S.D. Miss. Nov. 9, 2009) (Lee, J.); *Mississippi Protection & Advocacy System, Inc. v. Harrison Cnty., Miss.*, No. 1:09-cv-267-LG-RHN (S.D. Miss. June 11, 2009) (Guirola, C.J.).

## Necessity of Injunctive Relief

30. DRMS and the children it is charged with protecting lack an adequate remedy at law and will be irreparably harmed if Defendant is permitted to continue blocking DRMS and its agents access to monitor the children at the CARES Center.

31. Via separate motion filed this day, DRMS requests injunctive relief granting it and its agents access to monitor the children at the CARES Center.

## Necessity of Costs of Court and Reasonable Attorney's Fees

32. Prior to filing this suit, DRMS and its agents sought to resolve this dispute amicably. *See* Exhibit B.

33. An amicable resolution could not be reached because counsel for Defendant has interposed meritless objections. Contrary to counsel's assertion, the question of access to facilities like the CARES Center is not a matter of first impression. *See id.* (collecting statutes, regulations, cases, and prior court orders).

34. In particular, counsel for Defendant's insistence on a separate court order granting DRMS monitoring access to each and every facility housing individuals with disabilities in Mississippi is unnecessary, inconsistent with federal law, and a waste of this Court's time. The plain language of the P&A Acts does not require DRMS to seek a court order before it may enter a facility housing individuals with disabilities. Such a requirement would have a chilling effect on the ability of DRMS – and every P&A agency nationwide – to conduct the basic and routine monitoring activities Congress expressly set forth in the P&A Acts. *See Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 364 (M.D. La. 1999) ("it cannot be disputed that the delay in getting a court order frustrates the goal of the [PAIMI] Act."). As Judge Starrett wrote years ago, "Congress' recognition of the importance of protecting youth with disabilities would be undermined and

fatally frustrated if states, localities, and institutions are permitted to enact policies that limit and restrict DRMS's access to facilities and records. The language of the federal regulations accompanying the PAIMI Act demonstrates the broad access rights that DRMS must have in accordance with federal law." Exhibit C at 7.

35. Further, counsel for Defendant's objection on HIPAA grounds is not well-taken. DRMS and SPLC are not requesting any records at this time. If children in the CARES Center do not wish to discuss their protected health information with DRMS or SPLC, they do not have to sign up to speak with DRMS or SPLC.

36. Even if DRMS or SPLC were requesting records in accordance with the terms of the P&A Acts, however, they would be entitled to them over a HIPAA objection. *See, e.g., Iowa Prot. & Advocacy Servs., Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F. Supp. 2d 1150, 1175 (N.D. Iowa 2001) ("Nor can [defendant] realistically argue that an interest in maintaining confidentiality of the records outweighs permitting [Iowa's P&A] to have the access it seeks, even where a guardian objects, because IPAS must maintain the confidentiality of any records to the same extent [defendant] itself must.").

37. The purpose of having federal statutes, regulations, and reported cases is to direct the conduct of the Nation's citizens and organizations. Individuals and organizations should need no court order directing them to comply with federal law. Just as a citizen pays taxes pursuant to the Internal Revenue Code without demanding a personal court order, Defendant should comply with federal law pursuant to the P&A Acts without demanding a personal court order.

38. For these reasons, DRMS requests that this Court award it costs and reasonable attorney's fees incurred in bringing this action, in an amount to be shown by evidence.

## Prayer for Relief

39. Wherefore, premises considered, DRMS prays that this Honorable Court grant:

   a. A declaration that Defendant's denial of Plaintiff's access to monitor the children in the CARES Center violates the P&A Acts;

   b. A preliminary and permanent injunction requiring the Defendant, its employees, and its agents to cease their unlawful behavior and provide DRMS and its agent with timely, full, meaningful, and unaccompanied access to monitor the CARES Center in accordance with the P&A Acts;

   c. An award of costs and reasonable attorney's fees; and

   d. Other such relief as the Court deems just.

**RESPECTFULLY SUBMITTED**, this the 6th day of September, 2013.

**DISABLING RIGHTS MISSISSIPPI**

*/s/ Jody E. Owens II*

Jody E. Owens II, MSB # 102333
jody.owens@splcenter.org
Andrew Canter, MSB # 102906
andrew.canter@splcenter.org
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, MS 39201
601-948-8882 (phone)
601-948-8885 (fax)

Wendy Wilson-White, MSB # 100409
wwhite@drms.ms
DISABILITY RIGHTS MISSISSIPPI
210 East Capitol Street, Suite 600
Jackson, Mississippi 39201
601-968-0600 (phone)
601-968-0665 (fax)

*Counsel for Plaintiff*