**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**DISABILITY RIGHTS MISSISSIPPI**                                        **PLAINTIFF**

**V.**                                                      **CAUSE NO.  3:13cv547HTW-LRA**

**MISSISSIPPI CHILDREN'S HOME**                                  **DEFENDANT**
**SERVICES**

<u>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Disability Rights Mississippi

("DRMS") submits this memorandum in support of its Motion for Preliminary Injunction.

DRMS seeks an order granting it access to monitor the children in the CARES Center, a

Psychiatric Residential Treatment Facility operated by Defendant.

The present dispute is one of statutory interpretation. To the extent Defendant takes issue

with DRMS's factual allegations, however, DRMS respectfully requests the opportunity to call

witnesses, put on additional documentary evidence, and present oral argument at a hearing. *See*

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming injunction issued

without evidentiary hearing where there was no factual dispute).

**I.        Introduction**

Defendant has already admitted that Protection & Advocacy ("P&A") systems like

DRMS have authority under federal statutes and regulations – the "P&A Acts" – to investigate

the safety and well-being of children in Mississippi's juvenile detention facilities. *See* Exhibit D

(Defendant's Denial Letter).[1] Defendant further acknowledges that Judges Jordan and Starrett of

---

[1]  The P&A Acts consist of the statutes and regulations implementing the Protection and Advocacy for Individuals
with Mental Illness Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*; the Developmental Disabilities
Assistance and Bill of Rights Act of 2000 (the "PADD Act" or the "DD Act"), 42 U.S.C. §§ 15001 *et seq.*; and the
Protection and Advocacy of Individual Rights Program (the "PAIR Act"), 29 U.S.C. §§ 794e *et seq.*

this Honorable Court have applied the P&A Acts to grant DRMS access into multiple juvenile detention facilities.[2] *Id.*

Defendant, however, believes it is not bound by the P&A Acts. In its denial letter, it claimed that: (1) the P&A Acts do not apply to Psychiatric Residential Treatment Facilities ("PRTFs") like the CARES Center, and (2) a court order is required to engage in basic monitoring at the CARES Center. *Id.* at 1-2.

Neither assertion is correct. The federal statutes and regulations granting DRMS access to juvenile detention centers apply with equal force to PRTFs because both are facilities housing individuals with a disability. The plain language of the P&A Acts shows that Congress intended *all* individuals with a disability to have access to independent monitors, not just those individuals in the juvenile justice system. In fact, just since July 1 of this year, DRMS and its authorized agents have conducted routine monitoring at several PRTFs in Mississippi, including Millcreek of Pontotoc, Millcreek of Magee, and Diamond Grove in Louisville.[3]

Nor do the P&A Acts require DRMS to secure a court order before conducting a monitoring visit. The plain language of the P&A Acts contains no such requirement. The PRTF monitoring visits just mentioned were all lawfully conducted without a court order.

Because Defendant's objections lack merit, the Court should issue a Preliminary Injunction granting DRMS and its agents the access to which they are entitled under federal law.

---

[2]  Several other Judges in this District have issued similar Orders. *See Disability Rights Mississippi v. Lauderdale County*, No. 4:09-cv-137-TSL-LRA (S.D. Miss. Nov. 9, 2009) (Lee, J.); *Mississippi Protection & Advocacy System, Inc. v. Harrison County*, No. 1:09-cv-267-LG-RHN (S.D. Miss. June 11, 2009) (Guirola, C.J.).

[3]  If the timeframe were expanded to include all PRTFs that DRMS and its agents have visited in the past several years, the state-run Specialized Treatment Facility in Gulfport would be added to that list, as would several group homes.

## II.      Background and Procedural History

This section largely restates portions of the complaint: the legal framework undergirding this action as well as the procedural history that brought us to this point. If the Court has just finished reading the complaint it may wish to proceed directly to Part III.

### A.      Background on the P&A Acts

In the PAIMI Act, Congress found that "individuals with mental illness are vulnerable to abuse and serious injury . . . [and] subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning." 42 U.S.C. § 10801(a). Congress further recognized that "State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." *Id.* § 10801(a)(4).

To address these problems, the PAIMI Act "assist[s] States to establish and operate a protection and advocacy system for individuals with mental illness which will . . . protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and . . . investigate incidents of abuse and neglect of individuals." *Id.* § 10801(b)(2).

Similarly, in the PADD Act, Congress authorized the same system "to protect the legal and human rights of individuals with developmental disabilities." *Id.* § 15041. With the PAIR Act, meanwhile, Congress authorized that system "to protect the legal and human rights of individuals with disabilities who" are not covered under the PAIMI or PADD Acts. 29 U.S.C. § 794e(a)(1). These three laws are collectively referred to as the P&A Acts.

As a result of the P&A Acts, every state has created a "Protection and Advocacy System," or "P&A." "There is a P&A/CAP agency in every state and U.S. territory as well as one serving the Native American population in the four corners region. Collectively, the

P&A/CAP network is the largest provider of legally based advocacy services to people with disabilities in the United States." National Disability Rights Network, Member Agencies, *available at* http://www.ndrn.org/en/ndrn-member-agencies.html (last accessed Aug. 22, 2013).

While not identical, the P&A Acts overlap in many respects. In the PAIR Act, for example, Congress gave each P&A "the same general authorities, including access to records and program income, as are set forth in" the PADD Act. 29 U.S.C. § 794e(f)(2); *see, e.g.*, *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006) (concluding that the PAIMI, PADD, and PAIR Acts all granted Connecticut's P&A access to a non-residential facility providing services to individuals with emotional impairments); *Advocacy Inc. v. Tarrant County Hosp. Dist.*, No. 4:01-cv-62-BE, 2001 WL 1297688, at *2 n.4 (N.D. Tex. Oct. 11, 2001) ("Because the acts are virtually identical and further the same goal – protecting the rights of vulnerable individuals – judicial interpretation of provisions in [the former PADD Act] are useful for questions raised under a comparable provision in [the PAIMI Act].").

So that it may be effective, each P&A "shall have the power to bring legal actions to ensure the protection of its constituents and to litigate on behalf of its constituents." *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 375 (7th Cir. 2010) (en banc); *see also* 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i). "The core requirement of the federal P&A statutes is that, in order to receive federal funding, each state must establish an *effective* protection and advocacy system to respond to allegations of abuse and neglect and generally to protect the rights of individuals with disabilities." *Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Pub. Instruction*, 463 F.3d 719, 724 (7th Cir. 2006) (citations omitted and emphasis added).

DRMS is the P&A in Mississippi. *See, e.g.*, *Mississippi Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1056 (5th Cir. 1991) (affirming Judge Lee's "careful and scholarly memorandum opinion" and injunction granting the Mississippi P&A access to a residential facility housing adults with intellectual disabilities). It has contracted with Southern Poverty Law Center (SPLC), a nonprofit organization, to assist in fulfilling its statutory obligations. *See* Exhibit A (Agreement between DRMS and SPLC).

The agreement gives SPLC "access to detention centers, correctional and mental health facilities housing individuals with mental illness, developmental disabilities, and/or other disabilities under the age of 22," including monitoring authority, as authorized under the P&A Acts. *Id.* (citing 42 U.S.C. § 10804(a)(1)); *see also* 42 C.F.R. § 51.42(a) ("Access to facilities and residents shall be extended to all authorized agents of a P&A system.").

### B.    Procedural History of This Case

On July 30, 2013, SPLC spoke with counsel for Defendant to schedule a periodic monitoring visit to the CARES Center. *See* Exhibit B (Correspondence of Counsel).

Over the next several days, SPLC provided counsel for Defendant with citations to federal statutes, regulations, and court decisions granting P&A systems and their agents access to facilities housing individuals with disabilities. *Id.* Those authorities included Orders issued by Judges Jordan and Starrett, which are attached to this motion as Exhibit C. *Id.* SPLC addressed counsel opposite's specific concerns regarding HIPAA, the type of facilities authorized under the P&A Acts, Mississippi law, and the nature of SPLC's relationship with DRMS. *Id.*

On August 2, SPLC invoked its right to a written statement of reasons from Defendant explaining why Defendant was denying DRMS and SPLC monitoring access. *Id.* at 7 (citing 45 C.F.R. § 1386.22(i) and 42 C.F.R. § 51.43). SPLC requested a response by August 9. *Id.*

On August 13, counsel for Defendant issued a written letter formally denying SPLC monitoring access. *See* Exhibit D. Counsel concluded that "[a]ccording to my interpretation of these regulations, absent an allegation of abuse/neglect, an authorized consent or a court document is required" before DRMS or its agents could monitor the CARES Center. *Id.* at 2.

DRMS and SPLC subsequently concluded that this dispute would not be resolved within a reasonable time. *See* 42 U.S.C. § 10807(a). This suit followed.

## III.   Legal Standard

The law in this area is well-established:

> A preliminary injunction should issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (citation omitted).

"The decision to grant or deny a preliminary injunction lies within the discretion of the district court and may be reversed on appeal only by a showing of abuse of discretion." *Apple Barrel Prods, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) (citation omitted).

## IV.   Argument

Courts across the country, including the Fifth Circuit, have issued Orders or Injunctions granting state P&A systems access into facilities housing individuals with disabilities. *See Cotten*, 929 F.2d at 1056 (affirming Judge Lee's injunction granting the Mississippi P&A access to a residential facility housing adults with intellectual disabilities); *Connecticut Office of Prot. & Advocacy*, 464 F.3d at 242 (affirming injunction and finding that the PADD Act "provides access to service recipients for both investigatory and monitoring purposes, i.e., to investigate past instances of suspected abuse or neglect and to monitor to ensure current respect for the

rights and safety of service recipients. . . . Congress intended P & A systems not simply to respond to reports of maltreatment, but also to monitor facilities in order to prevent abuse or neglect."); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (affirming injunction and finding it "clear that the [PADD] Act provides express authority for P&As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued."); *Michigan Prot. & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 1202, 1207 (W.D. Mich. 1994) (granting P&A system access to state-run training schools and detention centers containing individuals with disabilities).

In fact, in ordering such access, courts have considered and rejected the same arguments Defendant proffered to DRMS before this suit. *E.g.*, *Equip for Equality, Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1091 (N.D. Ill. 2003) ("[defendant's] position was that [plaintiff] could not access its facilities unless it met any one of three conditions: (1) it obtained a court order; (2) it was conducting an investigation; or (3) it received a complaint from a patient") (granting plaintiff access to engage in monitoring).

Within the last five years, moreover, four Judges in this District have issued Orders or Injunctions granting DRMS access into facilities in the Southern District of Mississippi. *See J.H. ex rel. Gray v. Hinds County*, No. 3:11-cv-327-DPJ-FKB (S.D. Miss. Sept. 12, 2011) (Jordan, J.); *Disability Rights Mississippi v. Forest County*, No. 2:11-cv-53-KS-MTP (S.D. Miss. June 13, 2011) (Starrett, J.); *Disability Rights Mississippi v. Lauderdale County*, No. 4:09-cv-137-TSL-LRA (S.D. Miss. Nov. 9, 2009) (Lee, J.); *Mississippi Protection & Advocacy System, Inc. v. Harrison County*, No. 1:09-cv-267-LG-RHN (S.D. Miss. June 11, 2009) (Guirola, C.J.).

This motion should be resolved in an identical fashion.

### A.     DRMS Is Substantially Likely to Succeed on the Merits

#### 1.     *The P&A Acts Grant DRMS Broad Access Rights*

The P&A Acts grant DRMS the authority to monitor all facilities in Mississippi providing care or treatment to individuals with disabilities.

The analysis begins with the statutes. When Congress passed the PAIMI Act "to protect and advocate the rights of individuals with mental illness," it stated that a P&A "shall . . . have access to facilities in the State providing care or treatment" to those persons. 42 U.S.C. § 10805(a)(3). Similarly, the PADD Act provides that a P&A "shall . . . have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual, in order to carry out the purpose of this part." *Id.* § 15043(a)(2)(H). The PAIR Act, meanwhile, grants identical access rights to monitor all individuals with a disability who are not already covered by the PAIMI or PADD Acts – *i.e.*, those individuals without a mental illness or developmental disability. *See* 29 U.S.C. § 794e(f)(2); *Connecticut Office of Prot. & Advocacy*, 464 F.3d at 240.

Congress's use of the word "shall" in these statutes means that a facility's duty to provide access to a P&A is mandatory, not discretionary. *See* Scalia & Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion."). The CARES Center is required to grant DRMS access to its facility.

The regulations implementing these Acts are even more straightforward. The PAIMI regulation provides that:

> (b) A P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. . . .

(c) In addition to access as prescribed in paragraph (b) of this section, a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. This access is for the purpose of:

> (1) Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.
> (2) Monitoring compliance with respect to the rights and safety of residents; and
> (3) Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

(d) Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have legal guardians or conservators.

42 C.F.R. § 51.42(b)-(d).

The regulations implementing the PADD Act are once again similar. They provide that a

P&A:

> and all of its authorized agents shall have unaccompanied access to all residents of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, for the purpose of: (1) Providing information and training on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system, including the name, address, and telephone number of the system and other information and training about individual rights; and (2) Monitoring compliance with respect to the rights and safety of service recipients.

45 C.F.R. § 1386.22(g).

These laws establish DRMS's broad access rights. *Accord Miller*, 849 F. Supp. at 1207

(finding that PAIMI "requires that the protection and advocacy organization have the authority to

9

access facilities in the state which provide care and treatment to mentally ill individuals."); *Equip for Equality*, 292 F. Supp. 2d at 1091 ("Pursuant to the regulations, EFE has the right of reasonable access to Ingalls's facilities at reasonable times when EFE seeks to monitor compliance regarding patients' rights and safety, to inspect, view, and photograph a facility's patient areas, and to educate or inform staff and patients of its services.").

2. *The CARES Center Is a Covered Entity*

Defendant claims that although the P&A Acts grant DRMS access to juvenile detention centers, they do not grant DRMS access to psychiatric facilities like the CARES Center. The objection lacks merit.

The statutory and regulatory language in question is very broad. PAIMI gives DRMS "access to facilities in the State providing care or treatment" to individuals with mental illness. 42 U.S.C. § 10805(a)(3); *see also Miller*, 849 F. Supp. at 1207. PAIMI then says that "[t]he term 'facilities' may include, *but need not be limited to*, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3) (emphasis added).

Nothing in this text limits DRMS's monitoring activities to juvenile detention centers[4]; the language is inclusive. The question is simply whether the CARES Center "provid[es] care or treatment" to individuals with mental illness. *Id.* § 10805(a)(3).

To that point, Defendant has already admitted that the CARES Center *does* provide such care or treatment. In its denial letter, counsel for Defendant stated that "our clients are with us because of their need for mental health treatment." Exhibit D at 1. Counsel further admitted that

---

[4] Counsel for Defendant was provided with Orders from Judges Jordan and Starrett, which granted access to juvenile detention centers, to show the breadth of DRMS's access rights. Those Orders do not stand for the proposition that the P&A Acts extend only to the juvenile justice system.

"[o]ur responsibility is to provide psychiatric care in a therapeutic environment." *Id.* That is enough to declare the CARES Center a covered entity under the P&A Acts.

Even if Defendant's admission were not sufficient, federal regulations provide additional support for the proposition that the access provisions of the PAIMI Act apply to the CARES Center, since it is a "public or private residential setting that provides overnight care accompanied by treatment services." 42 C.F.R. § 51.2. In other words, the CARES Center is covered by PAIMI because it "render[s] care or treatment for individuals with mental illness." *Id.* § 51.42(b); *accord Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1050 (E.D. Wis. 2001) ("a cursory review of 42 U.S.C. § 10802 would reveal that Congress fully intended *any* facility, whether it be publicly or privately owned, to be subject to the provisions of the PAIMIA") (granting preliminary injunction).

Regarding the PADD Act, it is not clear whether or how many residents in the CARES Center have a developmental disability. If there are, the access provisions of the PADD Act apply to the CARES Center because it is a "setting that provides care, treatment, services and habilitation, even if only 'as needed' or under a contractual arrangement" to such individuals. 45 C.F.R. § 1386.19. The CARES Center would then have to grant access because it would be "provid[ing] services, supports, and other assistance for individuals with developmental disabilities." *Id.* § 1386.22(f); *see* C*onnecticut Office of Prot. & Advocacy*, 464 F.3d at 241.

In the unlikely event Defendant will contend that the CARES Center does *not* provide care, treatment, services, or habilitation for individuals with mental illness or developmental disabilities, the PAIR Act authorizes DRMS "to protect the legal and human rights of individuals

with disabilities who" are not covered under the PAIMI or PADD Acts, on access terms identical to the PADD Act. 29 U.S.C. § 794e(a)(1).[5]

For these reasons, the CARES Center is an entity covered by the P&A Acts. *Accord Miller*, 849 F. Supp. at 1207 ("The simple fact that DSS facilities are primarily concerned with education and rehabilitation does not prevent them from falling under the auspices of [PAIMI]. Accordingly, DSS facilities are governed by [PAIMI] if they house mentally ill individuals.").

### 3.    The P&A Acts Do Not Require a Court Order for Access

Counsel for Defendant's demand for a separate court order granting DRMS monitoring access to each and every Mississippi facility housing individuals with disabilities is unnecessary and inconsistent with federal law. The plain language of the P&A Acts does not require DRMS to seek a court order before it may monitor a facility treating individuals with disabilities.

The Fifth Circuit has expressed its displeasure with facilities that graft unique access requirements onto the P&A Acts. In Cotten, for example, Mississippi's state center for individuals with intellectual disabilities "imposed new notice and pre- and post-screening requirements for patient interviews and visits" by the P&A, among other burdensome requirements. *Cotten*, 929 F.2d at 1056. Judge Lee enjoined the restrictions.

The appellate court affirmed and firmly rejected the center's position. "Even if these barriers could be scaled," it wrote, "the pre-screening and post-interview counseling could only create a chilling effect of gigantic proportions." *Id*. at 1057. The Fifth Circuit agreed with Judge

---

[5] It is difficult to see how a *Psychiatric Residential Treatment* Facility could argue that it does not house or provide treatment for children with mental illness. If that argument is made, however, DRMS will seek access to the CARES Center under the PAIR Act to determine if any children have a disability and are eligible for monitoring services. As Judge Jordan has written, "[t]he right to investigate claims, such as those alleged in the Amended Complaint, and the right to monitor, would seemingly encompass the right to determine whether certain individuals are covered. . . . [A] number of courts have rejected the argument that a P & A service must establish disability before access is granted." *J.H.*, 2011 WL 3047667, at *3-4 (collecting cases).

Lee "that the Center's policies interfered with the plaintiffs' rights to an effective protection and advocacy system as required by the Act," and affirmed the permanent injunction. *Id.*

Defendant's demand for a court order is similarly burdensome and unlawful. "[I]t cannot be disputed that the delay in getting a court order frustrates the goal of the [PAIMI] Act." *Stalder*, 128 F. Supp. 2d at 364. As in *Cotten*, such a requirement has a chilling effect on the ability of DRMS – and every P&A agency nationwide, if the court order requirement is upheld – to conduct the basic and routine monitoring activities Congress set forth in the P&A Acts.

This Court should join its colleagues in finding that an order is not required for P&A access. As Judge Starrett wrote in 2011, "Congress' recognition of the importance of protecting youth with disabilities would be undermined and fatally frustrated if states, localities, and institutions are permitted to enact policies that limit and restrict DRMS's access to facilities and records. The language of the federal regulations accompanying the PAIMI Act demonstrates the broad access rights that DRMS must have in accordance with federal law." Exhibit C at 7; *accord Equip for Equality*, 292 F. Supp. 2d at 1099 ("EFE is entitled to access to the patients and the facilities at Ingalls for the purpose of performing its monitoring and educating functions, *despite the lack of a court order*, an investigation, or a complaint.") (emphasis added).

For these reasons, DRMS is substantially likely to succeed on the merits.

**B.      The Remaining Elements Are Satisfied**

Three elements remain in this analysis. Before addressing them, however, DRMS feels obliged to point out that in 2011, a member of this Court collected several cases on these elements as they related to DRMS's access rights, and summarized them as follows:

> a host of federal authority holds that irreparable harm exists when a P & A system is unable to fulfill its mandate under federal law, that the threatened injury of denying the injunction outweighs the harm caused by the injunction, and that granting the injunction would not disserve the public interest. *See, e.g., Mich.*

*Prot. & Advocacy Serv., Inc. v. Evans*, No. 09-12224, 2010 WL 3906259, at *5 (E.D. Mich. Sept. 30, 2010) (citing *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 653 (D. Conn. 2005); *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877 (S.D. Ohio 2005); *Wis. Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wis. 2001); *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003). This Court agrees—the P & A statutes reflect a strong public interest in protecting those with mental illnesses, and limiting a P & A service from fully exercising its authority places residents with mental illnesses at increased risk of harm. Thus, the issue is whether DRMS has established a substantial likelihood of success on the merits . . . .

*J.H.*, 2011 WL 3047667, at *2.

DRMS will now address the remaining three elements.

### C.     DRMS Faces a Substantial Threat of Irreparable Injury

"[T]he central purpose of a preliminary injunction . . . is to prevent irreparable harm. It is the threat of harm that cannot be undone which authorizes exercise of this equitable power to enjoin before the merits are fully determined." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975) (citations omitted). "[A]n injury is irreparable only if it cannot be undone through monetary remedies." *Enterprise Int'l, Inc. v. Corp. Estatal Petrol. Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quotation marks and citation omitted).

"There is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm." *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005) (citation omitted); *see also Wisconsin Coal. for Advocacy*, 131 F. Supp. 2d at 1051 ("the defendants' refusal to provide [plaintiff] with records that [plaintiff] is entitled to review (indeed, charged to review as a part of its responsibilities) does, in a very real and readily identifiable way, pose a threat to the plaintiff's being able to discharge its obligations") (granting preliminary

injunction). Each day that passes is one in which a child with a disability may need an independent monitor to know of and seek to resolve a problem.

Further, because monetary damages are not sought in this suit, they cannot be relied upon to remedy the injury to DRMS.

**D.      The Threatened Injury Outweighs Any Harm to Defendant**

This factor asks the Court to determine whether "the balance of equities tips in [the movant's] favor." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quotation marks and citation omitted).

On one hand, DRMS is presently being denied its statutory right to monitor the children at the CARES Center. DRMS cannot ensure that all individuals with disabilities are being protected and housed safely at that facility. That constitutes actual injury to DRMS.

On the other hand, Defendant has not identified how it will be harmed by permitting monitoring. The primary objection in its denial letter was that there was no legal authority or factual reason to monitor, from which we apparently are to infer that "everything is fine." Defendant then added that monitors' questions could have an unspecified deleterious effect on the children in its care. *See* Exhibit D.

Defendant's arguments should be rejected.

First, the plain language of the P&A Acts does not permit the Court to take Defendant's word that the children in its facility are fine. P&A access is provided so that an independent monitoring agency may investigate and photograph all areas where individuals with disabilities live, sleep, eat, and play, and to speak confidentially with those individuals who wish to speak to

the P&A. 42 C.F.R. § 51.42(b)-(d); 45 C.F.R. § 1386.22(g); *see Disability Rights Wisconsin*, 463 F.3d at 729 ("The point of the federal P&A statutes is to establish and equip a specialized agency to look out for individuals with mental illness.").

The same regulations state that the P&A's monitoring visit may be conducted without accompaniment of the facility staff. 42 C.F.R. § 51.42(b)-(d); 45 C.F.R. § 1386.22(g); *see Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1170 ("the regulation permits P & A agents to interview residents 'privately' and 'unaccompanied' by such other persons") (granting P&A's motion for preliminary injunction).

Thus, the P&A Acts contain Congress's reasoned judgment that there is no harm to facilities or their residents from a P&A conducting an unaccompanied monitoring visit. Facilities do not have the discretion to refuse a monitoring visit by stating their individual belief that children could be harmed.

Second, the Court should recognize that there is no factual basis for Defendant's claim that P&A monitoring could negatively affect children in the CARES Center. Defendant will not let the P&A engage in monitoring on its property, so how could it possibly know whether monitoring is harmful? The assertion is pure speculation.

Third, if the Court wishes to consider evidence at a hearing, DRMS will be prepared to present evidence that it and its authorized agent regularly and routinely conduct monitoring visits at PRTFs across Mississippi without adverse effects to children. Far from causing harm, such visits allow children with mental illness to voice any concerns they may have about their stay in a facility to a person outside the facility's chain of command, thereby protecting their rights.

Because there is actual harm to DRMS and no harm to Defendant, this Court should concur with its colleague from the Middle District of Louisiana and conclude that it "sees no

harm that would come to the defendants by forcing them to comply with provisions of the PAMII Act, a law adopted by the national legislature." *Stadler*, 128 F. Supp. 2d at 368; *see also Tarrant County*, 2001 WL 1297688, at *6 (granting P&A system injunction for access to records upon finding that "issuance of a permanent injunction should not prove to be a hardship since it requires only that the Hospital District follow the law").

### E.    Injunctive Relief Serves the Public Interest

"The final major factor bearing on the court's discretion to issue or deny a preliminary injunction is the public interest. Focusing on this factor is another way of inquiring whether there are policy considerations that bear on whether the order should issue." Charles A. Wright et al., 11A Fed. Prac. & Proc. § 2948.4 (updated Apr. 2013). "The general flexibility of equitable powers is enhanced where, as here, the public interest is at stake." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987).

The public interest is well-served by issuance of a preliminary injunction in this matter.

The public interest is always served by requiring parties to comply with federal statutes. That is likely because "[t]he public interest may be declared in the form of a statute." Wright et al., § 2948.4; *see, e.g.*, *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 625 (5th Cir. 1985) ("in our consideration of the public interest at stake we note that the Mississippi Legislature recently enacted the Utility Reform Act of 1983").

Here, by passing the P&A Acts, Congress has already expressed that the public interest is satisfied by allowing P&A systems like DRMS access to monitor individuals with disabilities living at the CARES Center.

Other courts have agreed that the public interest is served when a P&A system seeks to fulfill its obligation to protect children from harm. *See Michigan Prot. & Advocacy Serv., Inc. v.*

*Evans*, No. 09-12224, 2010 WL 3906259, *5 (E.D. Mich. Sept. 30, 2010) ("It is in the public's interest to have agencies such as Plaintiff able to access the necessary records to ensure individuals with disabilities are not suffering from abuse or neglect.") (issuing permanent injunction and awarding partial attorney's fees); *Tarrant County*, 2001 WL 1297688, at *6 ("Nor is the public interest done a disservice by the timely investigation and resolution of concerns about the treatment of the more vulnerable members of society."); *Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1175 ("the public interest, as weighed by Congress, weighs in favor of injunctive relief permitting IPAS to obtain access to patients and their records even where guardians of the patients object to such access.").

Under these authorities, issuance of a preliminary injunction is in the public interest.

## V.    DRMS Should Not Be Required to Post a Bond

Although Rule 65(c) permits courts to order the posting of a bond, they are not required to do so. *Kaepa*, 76 F.3d at 628. Several courts have waived the bond requirement in cases where plaintiffs seek "to enforce important federal rights or public interests[] arising out of comprehensive federal health and welfare statutes." *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991) (quotation marks and citation omitted). Courts also have considered the "equities of potential hardships," *id.*, as well as the strength of the movant's claims. *See, e.g.*, *Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (finding that "no security was needed because of the strength of Eagle–Picher's case and the strong public interest involved"); *Sluiter v. Blue Cross & Blue Shield*, 979 F. Supp. 1131, 1145 (E.D. Mich. 1997) ("Due to the strong likelihood of Plaintiffs' success on the merits and their demonstrated financial inability, the Court finds it would be improper to require any security in this matter.").

Here, several factors counsel in favor of waiver, including the strength of DRMS's claims, the lack of harm to Defendant, the strong public interest involved, and the financial hardship a bond would place on DRMS, a nonprofit protection and advocacy organization. In addition, waiving the bond requirement would align this Court with others to have considered the issue. *See Iowa Prot. & Advocacy Servs.*, 152 F. Supp. 2d at 1176 ("the court feels justified in waiving the bond requirement in this case, where neither party raised the issue, it is unclear what 'security' [defendant] would require against improvident issuance of the preliminary injunction, and the plaintiff is a non-profit advocacy organization created by the state under federal law.").

DRMS therefore respectfully asks that the bond requirement be waived.

## VI.    Conclusion

For these reasons, DRMS respectfully requests entry of a preliminary injunction requiring Defendant to grant DRMS and its authorized agent access to monitor the CARES Center.

**RESPECTFULLY SUBMITTED**, this the 6th day of September, 2013.

                              **DISABILITY RIGHTS MISSISSIPPI**

                              *s/ Andrew Canter*
                              Jody E. Owens II, MSB # 102333
                              jody.owens@splcenter.org
                              Andrew Canter, MSB # 102906
                              andrew.canter@splcenter.org
                              SOUTHERN POVERTY LAW CENTER
                              111 East Capitol Street, Suite 280
                              Jackson, MS 39201
                              601-948-8882 (phone)
                              601-948-8885 (fax)

Wendy Wilson-White, MSB # 100409
wwhite@drms.ms
DISABILITY RIGHTS MISSISSIPPI
210 East Capitol Street, Suite 600
Jackson, Mississippi 39201
601-968-0600 (phone)
601-968-0665 (fax)

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that I have this day caused the foregoing to be electronically filed with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record. In addition, I have this day caused a copy of the foregoing to be emailed to:

Arin Clark Adkins, Esq.
General Counsel & Director of Corporate Compliance
Mississippi Children's Home Services
P.O. Box 1078
Jackson, MS 39215
arin.adkins@mchscares.org

This the 6th day of September, 2013.

*s/ Andrew Canter*